## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 23 2020, 10:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Zachary A. Witte
David A. Felts
Locke & Witte
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyrell D. Morris,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff.*

June 23, 2020

Court of Appeals Case No.
19A-CR-3072

Appeal from the Allen Superior Court

The Honorable David M. Zent, Judge

Trial Court Cause No.
02D06-1906-F5-178

**Brown, Judge.**

[1] Tyrell D. Morris appeals his conviction for domestic battery as a level 5 felony. He claims the evidence is insufficient to sustain his conviction. We affirm.

## *Facts and Procedural History*

[2] In June 2019, R.B. and her three-year-old son lived in a motel room in Allen County, and R.B. was five months pregnant with Morris's child. On June 11, 2019, Morris was at work, learned he had lost his job, and exchanged text messages with R.B. who was at her place of employment. Morris went to R.B.'s workplace, picked up the key to her motel room, and went to the motel. After work, R.B. picked up her son from daycare, picked up Morris from the motel, went to a liquor store where they purchased vodka, and returned to the motel room. Morris and R.B. started to prepare dinner, and Morris drank vodka.

[3] At some point, the power went out, and Morris and R.B. went outside to see if anyone knew why. R.B. went back in the room, sat on the bed, and started eating. Morris had an angry demeanor. "Words were being exchanged," and Morris "knocked [the] plate of food out of [R.B.'s] hand and it went all over [her]." Transcript Volume II at 18. Morris started to clean up the food. Morris stood in the doorway smoking while R.B. was sitting on the bed "[u]p against the wall" and R.B.'s son was in his bed watching YouTube videos. *Id*. at 20. R.B. saw Morris "coming at [her]" or "charging at [her]," and "[o]ne leg was on the floor, he grabbed [her] by [her] sides and was pressing into [her] belly as he was throwing [her] into the wall." *Id*. at 19. When he grabbed R.B.'s sides,

Morris's hands squeezed her, and he shoved her against the wall several times. R.B.'s right hand struck the wall, which hurt. Morris left, and R.B. called 911.

[4] Fort Wayne Police Officer Anthony Maurer responded to the motel and, upon his arrival, observed that R.B. was crying, visibly upset, appeared to be in pain, "holding her left hand over her right hand, seemed to be favoring it," and appeared to have some swelling in her hand. *Id*. at 94. R.B. told Officer Maurer that Morris had been drinking, became angry with her, and "shook her [] into the . . . wall and the bed." *Id*. at 95. Officer Maurer located Morris in another room in the motel with two females and noticed the smell of alcohol on his breath and that his speech seemed to be "a little bit slurred." Id. at 96. Morris told Officer Mauer there had been an argument regarding the fact he lost his job and that he was told to leave the motel room. Another officer took photographs of R.B. in the motel room. R.B.'s right hand became swollen and bruised and her sides became bruised.

[5] The State charged Morris with: Count I, domestic battery resulting in bodily injury to a pregnant person as a level 5 felony; and Count II, domestic battery in the presence of a child less than sixteen years of age as a level 6 felony. The State filed a notice of intent to seek an habitual offender enhancement. The court held a bench trial at which it heard testimony from R.B., Officer Maurer, and Morris. The court admitted text messages between Morris and R.B. on the day of the altercation and photographs. Several of the text messages related to Morris losing his job and whether he was involved with another woman.

[6] R.B. testified that her right hand hurt when it struck the wall and that it began to swell and became black and blue. She also testified that she had a bruise on each of her sides where Morris grabbed her, that the bruises appeared several days later, and the bruised areas hurt. On cross-examination, R.B. indicated she recalled telling Officer Maurer the altercation started because Morris "was flipped out because he was buzzing." *Id.* at 36. She testified that, in a later interview with a detective, she stated the reason for the altercation was jealousy and that, when the power went out, she went into the hall and there were other gentlemen out there. When asked if she remembered telling a Department of Child Services caseworker the reason for the altercation was that Morris lost his job, she stated she did not remember. She testified that, when Morris knocked the plate of food from her hand, she was sitting on the bed eating lasagna with red sauce and that it went "[a]ll over [her] lap." *Id.* at 40. She also indicated she told the detective that Morris knocked over a nightstand during the altercation. On redirect examination, she indicated that from what she observed on June 11th, Morris was "buzzing," was jealous, and lost his job. *Id.* at 52.

[7] On cross-examination, defense counsel asked Officer Mauer if he saw any food stains, red sauce, a broken nightstand, or damage to any walls in the photographs, and Officer Maurer replied that he did not. When asked if he would have photographed food stains, a broken plate, dents in the wall, or a broken nightstand if he had noticed them, Officer Maurer replied affirmatively. Morris testified that he did not grab or shake R.B. on June 11, 2019. On cross-

examination, he indicated R.B. was pregnant with his baby and that, on June 11th, he knew she was pregnant. The court found Morris guilty as charged and that he was an habitual offender. The court entered judgment on Count I, did not enter judgment on Count II, and sentenced him to five years with two years suspended to probation under Count I. The court enhanced his sentence by four years for being an habitual offender.

## *Discussion*

[8] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We consider the evidence most favorable to the trial court's ruling. *Id*. We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. at 147.

[9] Morris asserts the evidence is insufficient to support his conviction. He argues that R.B. claimed he threw a plate of red sauce on her and a nightstand was broken during the altercation but that the photographs do not show any food stains on her or on the bedding or any documentation of a broken nightstand. He argues police did not document any damage to the wall. He also argues

R.B. provided various motives for his behavior and failed to keep her story straight.

[10] Ind. Code § 35-42-2-1.3 provides that a person who knowingly or intentionally touches a family or household member in a rude, insolent, or angry manner commits domestic battery and that the offense is a level 5 felony if the offense results in bodily injury to a pregnant family or household member if the person knew of the pregnancy. "Bodily injury" means "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. A particular level of pain is not required in order to rise to the level of impairment of physical condition; rather, physical pain is an impairment of physical condition. *Bailey v. State*, 979 N.E.2d 133, 138 (Ind. 2012); *see also Toney v. State*, 961 N.E.2d 57, 60 (Ind. Ct. App. 2012) (all that is required to establish bodily injury is that the victim experience any physical pain as a result of the defendant's actions and there is no requirement the pain be of any particular magnitude or duration) (citation omitted). A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so, and a person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2.

[11] The record reveals that Morris and R.B. argued, and Morris knocked the plate of food from R.B.'s hand. Morris then began to clean up the food. The record further reveals that, at some point while R.B. was on the bed "[u]p against the wall," Morris "charg[ed]" at her with an angry demeanor, grabbed her by her sides, and shoved or pressed her into the wall, and R.B.'s right hand struck the

wall. Transcript Volume II at 19-20. R.B. testified that, when he grabbed her sides, Morris squeezed her and shoved her against the wall several times. She testified that her hand hurt when it struck the wall, that her hand became swollen and bruised, and that her sides hurt and became bruised. Morris testified he knew R.B. was pregnant. Several admitted photographs depict R.B. and part of the motel room, bed, and wall, and to the extent the photographs do not clearly depict food stains on R.B. or the bed or a nightstand, R.B. referred to Morris cleaning up the spilled food, and the photographs do not show the entire motel room and do not establish that food was not spilled or that a nightstand was not knocked over or broken. Further, the court heard evidence regarding Morris's demeanor and the possible reasons for the altercation including jealousy, that Morris had been drinking, and that he had lost his job. This Court will not assess the credibility of witnesses or reweigh the evidence. *See Drane*, 867 N.E.2d at 146. Based upon the record, we conclude the State presented evidence of a probative nature from which a trier of fact could find beyond a reasonable doubt that Morris committed the crime of domestic battery as a level 5 felony.

[12] For the foregoing reasons, we affirm Morris's conviction.

[13] Affirmed.

Najam, J., and Kirsch, J., concur.